UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERRY HALIBURTON,

    Plaintiff,

v.                                     Case No. 3:21-cv-625-MMH-LLL

RICKY D. DIXON[1] and CENTURION
OF FLORIDA, LLC.,

    Defendants.

_____

## ORDER

### I. Status

Plaintiff Jerry Haliburton, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on June 18, 2021, by filing a pro se Civil Rights Complaint (Doc. 1; Complaint) pursuant to 42 U.S.C. § 1983. As Defendants, Haliburton sues Ricky D. Dixon, Secretary of the FDOC, and Centurion of Florida, LLC (Centurion). Complaint at 2. Haliburton, who alleges he suffers from Hepatitis C virus (HCV), argues that Defendants

---

[1] Because Haliburton appears to sue Mark Inch only in his official capacity as the Secretary of the FDOC, a position he no longer holds, the Court substitutes Ricky D. Dixon, the current Secretary, as the proper party Defendant. Fed. R. Civ. P. 25(d)(1). However, a claim against Dixon in his official capacity is essentially a claim against the FDOC. Thus, in Dixon's Motion to Dismiss and Haliburton's Response thereto, the parties refer to Defendant Dixon as Defendant FDOC. See Docs. 31, 37. In any event, even if Haliburton sues either Inch or Dixon in their individual capacities, that fact does not affect the Court's analysis or the outcome of this Order.

Dixon as Secretary of the FDOC and Centurion violated his Eighth Amendment right to be free from cruel and unusual punishment, as well as his right under Title II of the Americans with Disabilities Act (ADA), and Defendant Dixon violated Section 504 of the Rehabilitation Act (RA) when Defendants refused to provide Haliburton with lifesaving HCV treatment because of a cost-saving policy. Id. at 5-7. As relief, Haliburton seeks injunctive relief, compensatory and punitive damages, and attorney's fees and costs. Id. at 8.

Before the Court are Defendants Centurion's and FDOC's Motions to Dismiss. See Defendant Centurion of Florida, LLC's Amended Motion to Dismiss (Doc. 29; Centurion Motion), with Exhibit (Doc. 29-1); Motion to Dismiss by Defendant Florida Department of Corrections (Doc. 31; FDOC Motion), with Exhibits (Doc. 31-1 and Doc. 31-2). Haliburton filed a Response. See Plaintiff's Response in Opposition to Defendants['] Motion[s] to Dismiss (Doc. 37; Haliburton Resp.), with Exhibit (Doc. 37-1). Haliburton also filed a Motion for Leave to Amend. See Plaintiff's Motion for Leave to Amend Civil Rights Complaint (Doc. 30), with Exhibit (Doc. 30-1). Defendant Centurion filed a response in opposition to Haliburton's Motion to Amend. See Defendant Centurion of Florida, LLC's Response to Plaintiff's Motion for Leave to File Amended Complaint (Doc. 32). The Motions are ripe for review.

## II. Haliburton's Allegations

In his Complaint, Haliburton alleges that in 1998, while housed at Union Correctional Institution, medical officials determined Haliburton suffered from HCV. Complaint at 6. He contends that HCV is a serious medical condition that can cause decompensated cirrhosis of the liver, cancer, and death. Id. at 5. According to Haliburton, after his diagnosis, doctors declared him a qualified individual with a disability and recommended he undergo a liver biopsy and other medical treatments; however, Defendants declined to provide him "access to any type of medical treatment for his H[CV] infection i.e. interferon, liver biopsy, or otherwise." Id. at 6.

Haliburton asserts that Dixon, in his official capacity as the Secretary of the FDOC, has failed to ensure that Haliburton received medical treatment for HCV. Id. at 5. According to Haliburton, Defendant Dixon has instead "implemented the customary practice of delaying medical treatment to [Haliburton] and other prisoners in his custody then ultimately denying [Haliburton] medical treatment for his hepatitis C [ ] solely based upon costs for treatment." Id. at 5-6.

Haliburton asserts that between September 2013 and August 2016, Centurion contracted with the FDOC to provide medical treatment to prisoners in FDOC custody. Id. at 6. He maintains that Centurion was aware of his HCV diagnosis and need for medical treatment. Id. But according to Haliburton,

3

Centurion followed a cost-saving policy and practice of refusing HCV treatment to Haliburton and other prisoners. Id. at 6-7.

Haliburton contends that because of Defendants' denial of HCV treatment, he "has sustained decompensate[d] cirrhosis of the liver which require[s] a liver transplant." Id. at 7. Based on these facts, Haliburton asserts that Defendants' conduct amounts to deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Id. at 5-7. He also alleges that Defendants have failed to accommodate his disabilities and provide adequate medical care under the ADA, and Dixon's actions also have violated the RA. Id. at 6-7.

### III. Summary of the Arguments

In its Motion, Centurion contends that the Court should dismiss the claims against it for four reasons: (1) Haliburton's claims are barred by the statute of limitations; (2) Haliburton failed to properly exhaust his administrative remedies; (3) Haliburton fails to state a plausible Eighth Amendment claim upon which relief can be granted; and (4) Centurion is not liable under Title II of the ADA. See generally Centurion Motion. In his Response, Haliburton argues that his claims should not be dismissed because (1) the continuing violation doctrine permits him to sue on an otherwise time-barred claim; (2) he did exhaust his administrative remedies; and (3) he has

4

stated plausible Eighth Amendment and ADA claims against Centurion. See Haliburton Resp. at 14-18.

In its Motion, the FDOC argues that the Court should dismiss the claims against it because (1) Haliburton failed to properly exhaust his administrative remedies and (2) it is entitled to Eleventh Amendment immunity. See generally FDOC Motion. In his Response, Haliburton argues that the Court should not dismiss his claims because (1) he did exhaust his administrative remedies and (2) he has stated a plausible claim for relief against the FDOC. See Haliburton Resp. at 8-13.

### IV. Analysis[2]

The Prison Litigation Reform Act (PLRA) requires Haliburton to exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, Haliburton need not

---

[2] Because the Court finds that this action is due to be dismissed for Haliburton's failure to exhaust his administrative remedies, the Court need not address Defendants' other arguments.

"specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211).[3] Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

6

> exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Haliburton] has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

7

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. But the ordinary three-step procedure need not apply in all instances. A prisoner may skip the informal grievance step and immediately file a formal grievance for issues pertaining to various things, including "medical grievances" or "a formal grievance of a medical nature." Fla. Admin. Code r. 33-103.005(1); Fla. Admin. Code r. 33-103.008. If a prisoner is permitted to bypass the informal grievance step, he must file the formal grievance with the warden within 15 days from the date on which the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(b). A response must be

provided to the inmate within 20 days of receipt of the formal grievance. Fla. Admin. Code r. 33-103.006(6). "If the inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office of the Secretary using Form DC1-303 (same form as a formal grievance)." Jenkins v. Sloan, 826 F. App'x 833, 835 (11th Cir. 2020) (citing Fla. Admin. Code Ann. R. 33-103.007). The grievance appeal to the Office of the Secretary must be received within 15 days from the date the response to the formal grievance is returned to the inmate. Fla. Admin. Code r. 33-103.11(c).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required

9

attachments. See Fla. Admin. Code R. 33-103.014(1).

Here, Defendants argue Haliburton did not exhaust his administrative remedies because the Secretary returned his grievance appeal without action. Centurion Motion at 10; FDOC Motion at 13-14. The FDOC also argues that Haliburton's grievances lacked any allegations related to his ADA and RA claims. FDOC Motion at 14. In support of their arguments, Defendants attach to their motions a summary printout of Haliburton's grievance appeals, series of administrative grievances, and responses. See generally Docs. 29-1; 31-1; 31-2.

In his Response, Haliburton asserts that he did exhaust his available administrative remedies. Haliburton Resp. at 11-12. According to Haliburton, he filed a formal grievance of a medical nature that the warden denied on the merits and then filed a grievance appeal to complete the grievance process. Id. at 11-12. He admits that the Secretary returned his appeal as untimely filed but argues that because the warden denied his formal grievance on the merits at the institutional level, the Secretary was without authority to return his appeal without considering it on the merits. Id. at 12. To that end, Haliburton asserts he gave prison officials an opportunity to address his complaints, and thus the Court should deny Defendants' request to dismiss the action based on exhaustion. Id. In support of his argument, Haliburton attaches to his Response a formal grievance, his grievance appeal, and the responses thereto.

10

Doc. 37-1 at 2-5.

Accepting Haliburton's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of <u>Turner</u>. Thus, the Court proceeds to the second step of the two-part process and considers Defendants' arguments about exhaustion and makes findings of fact.

In resolving the disputed factual issues here, the Court finds that Haliburton did not complete the administrative process in accordance with the applicable grievance procedures set forth in Rule 33-103 of the Florida Administrative Code. The parties do not dispute that Haliburton was permitted to bypass the informal grievance step and first file a formal grievance of a medical nature directly with the warden. Indeed, Haliburton attaches to his Response, and Defendants also attach to their motions, a formal grievance (log # 2102-213-058) that Haliburton submitted to the warden on February 16, 2021, which states:

> I am filing this formal grievance of medical nature in which Mr. Jerry L. Haliburton DC # 046651 aggrieve[s] the medical department for their procrastinating to provide me medical treatment for my infection hep[atitis]-c for years until my liver has reached the point of no return (liver cirrhosis)[.] I continue to experience pain in my liver.

Doc. 37-1 at 2; Doc. 31-1 at 5; Doc. 29-1 at 9. On February 23, 2021, officials denied Haliburton's formal grievance (log # 2102-213-058), explaining:

11

> Your request for Administrative Remedy or Appeal has been received, reviewed, and evaluated.
>
> Inmate HALIBURTON, please, be advised that your Hepatitis C treatment was handled in accordance with FDC procedures and applicable treatment protocols.
>
> Based on the above information, your grievance is denied.
>
> You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, and providing attachments as required by Chapter 33-103, Request for Administrative Remedy or Appeal, completing the form, and providing attachments as required by Chapter 33-103 and forwarding your appeal to the Bureau of Inmate Grievance Appeals, . . . within 15 calendar days of this mailed response.

Doc. 37-1 at 3; Doc. 31-1 at 6; Doc. 29-1 at 10.

On March 3, 2021, Haliburton submitted to the Secretary a grievance appeal (log # 21-6-07258), stating:

> This is an appeal of the formal grievance in which I Mr. Jerry L. Haliburton # 046651 complain of the inadequate medical treatment given [to] him for his hepatitis-c infection which has resulted in irreversible damage to his liver to wit cirrhosis. Primarily, Haliburton complain[s] that medical staff at Union Correctional intentionally procrastinated in providing Haliburton with any form of medical treatment to him for his hepatitis infection until his liver commenced cirrhosis . . . .
>
> The response given at the institutional level does not deny Haliburton's claim of delay for medical treatment nor does the response address any of Haliburton's

12

> concerns . . . . Thus, Haliburton request[s] administrative review of the medical department failure to provide Haliburton adequate medical treatment in any form for his hepatitis-c infection before he got cirrhosis of the liver. Haliburton will also note in this appeal that liver cirrhosis is not detectable via ultrasound examination.

Doc. 37-1 at 4; Doc. 31-1 at 4; Doc. 29-1 at 8. The Secretary returned the appeal (log # 21-6-07258) on April 19, 2021, advising:

> Appeal Returned without Action:
>
> Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure. You are grieving a delay in treatment for Hepatitis C. Records reviewed indicate that you received and completed treatment in 2018.
>
> Please be advised that you are outside the timeframe to grieve an issue that happened in 2018 and the Institution should have returned your formal grievance.
>
> Formal grievances must be received no later than 15 calendar days from: 1. The date on which the informal grievance was responded to; or 2. The date on which the incident or action being grieved occurred.
>
> Just because the Institution failed to return your formal grievance does not negate our office from returning your appeal.
>
> Therefore, your appeal is being returned without action.

Doc. 37-1 at 5; Doc. 31-1 at 3; Doc. 29-1 at 7.

Haliburton does not dispute that he received and completed his HCV

13

treatment in 2018 and then waited three years to submit his formal grievance at the institutional level. Although officials denied Haliburton's formal grievance on the merits, the Secretary found his appeal to be untimely filed. Haliburton argues that the Secretary waived its ability to return his appeal for procedural defects because the institutional level responded to his formal complaint on the merits. But "a prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the last available stage of the administrative review." Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018). Further, "'[c]ourts must give deference to prison officials regarding the interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances,' and provided that the application of the grievance rules was not 'clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts.'" Stephens v. Corizon, LLC, No. 3:20-cv-70-BJD-PDB, 2021 WL 2981317, at *8 (M.D. Fla. July 14, 2021) (quoting Jones v. Frank, No. 07-cv-141-BBC, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008)).[4]

---

[4] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

14

Because the Secretary, as the last available stage of administrative review, did not deny Haliburton's appeal on the merits, the FDOC did not waive its application of this procedural defect. Haliburton began the grievance process three years after his HCV treatment. He makes no argument explaining why he waited so long to avail himself of the administrative process nor does he argue that his administrative remedies were unavailable to him. Thus, the Court finds that the Secretary's interpretation of its grievance rules was not clearly erroneous, arbitrary, or intended to prevent Haliburton from exercising his right of access to the courts. As such, Haliburton failed to properly exhaust his administrative remedies and his Complaint is due to be dismissed.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Defendants Centurion's and FDOC's Motions to Dismiss (Docs. 29; 31) are **GRANTED** to the extent Defendants seek dismissal for Haliburton's failure to exhaust his administrative remedies.

2. Haliburton's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.[5]

---

[5] The applicable four-year statute of limitations has likely run as to Haliburton's claims. See McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). Nevertheless, the Court dismisses Haliburton's claims without prejudice in the event that Haliburton could show otherwise.

3. Haliburton's Motion for Leave to Amend Civil Rights Complaint (Doc. 30) is **DENIED**. He seeks to amend his Complaint to allege more specific allegations for the same claims against the same Defendants. Id. at 2. However, his proposed amendment would not cure his failure to exhaust those claims.

4. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of November, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-7
C: Jerry Haliburton, #046651
   Counsel of record

16